## Commonwealth v. Ebersole.

*Criminal law—Automobiles—Failure to stop, render assistance and give name—Knowledge of injury—Res gestæ—Act of June 30, 1919.*

1. The 23rd section of the Act of June 30, 1919, P. L. 678, requires "any operator of a motor-vehicle who shall have injured the person or property of any other user of the highway" to stop, render assistance, and, upon request, to give his name and address.

2. This section differs from the laws of other states, in that it does not contain the word "knowing" or "knowingly."

3. The meaning of the Pennsylvania act is that one who knows he has had a collision shall stop.

4. Upon the trial of one indicted for failure to stop and do the other things required by the act, the defendant offered to show by a witness, who was riding with him, that, immediately after the impact, the witness turned around, looked back and reported to him that the car he had collided with had not stopped; which was to be followed by his own testimony that he believed no damage had been done, and for that reason went on without stopping. The trial judge rejected the offer: *Held*, error, and new trial granted.

Motion for new trial. Q. S. Dauphin Co., June Sess., 1922, No. 33.

*Maurice R. Metzger*, for motion; *Philip S. Moyer*, District Attorney, contra.

HARGEST, P. J., Oct. 23, 1922.—This defendant was convicted at the June Sessions, 1922, under an indictment charging that he failed "to stop and render such assistance to said David Gerlock as was necessary." David Gerlock, the prosecuting witness, was driving an automobile containing five other persons northwardly toward Harrisburg on the State highway below Middletown, after dark, about 7 o'clock, on April 2, 1922. Two other automobiles were coming toward him. The first had glaring lights, but he did not see the second until he was out of the direct rays of the light of the first machine. The defendant was driving his car behind Gerlock and going at a rate of from thirty to thirty-five miles an hour. He passed around Gerlock's machine while the other cars were approaching and turned to the right, in front of Gerlock's automobile, to avoid the approaching cars. He struck Gerlock's automobile, taking off both hub caps on the left side, injuring the left front fender, crushing the rear fender and breaking the running-board. The damage amounted to $157.15. The hub cap of the defendant's machine was torn off and his fender damaged. The defendant continued running up the right bank of the road, over a stone pile, and, having gotten his machine again on the roadway, proceeded without stopping. A day or two later, Gerlock located the defendant's automobile in a garage in Elizabethtown and found a robe thrown over the fender where it had been damaged. A State policeman testified that the defendant said he had hit the car, but was "scared and figured" he could get away.

On the trial, the defendant offered to show by a witness, Krodel, who was sitting on the right front seat of the defendant's machine, that, immediately after the impact, he turned around, looked back and reported to the defendant that the other automobile did not stop, to be followed by evidence from the defendant that he believed no damage had been done, and, for that reason, went on without stopping. This evidence was excluded, and the ruling of the court in this respect is assigned as error.

Section 23 of the Act of June 30, 1919, P. L. 678, provides, in part: "Any operator of a motor-vehicle who shall have injured the person or property of any other user of the highway shall stop and render such assistance as may be necessary, and shall, upon request, give his name and address to the injured party or his proper representative."

2 D. & C.

We charged the jury that there were three distinct elements under this act, any one of which constituted an offence; that the defendant, knowing he had a collision, was bound to stop and ascertain whether assistance was necessary. If he failed to stop, the offence was complete. If, after stopping, he failed to render such assistance as necessary, the offence was also complete, and if, even after stopping and rendering assistance, he failed to give his name and address to the injured party, upon request, the offence was complete. Since then this interpretation of the act has been sustained in Com. v. Zeitler, 79 Pa. Superior Ct. 81.

But it is contended that the court erred in not admitting the testimony of Krodel as to what he did and said to the defendant, because this act of assembly imposes no duty upon one who has a collision, unless he knows that the collision has inflicted damage upon the other party.

In support of this contention, the defendant relies upon Com. v. Zeitler, 79 Pa. Superior Ct. 81. In that case Judge Porter said: "The operator of a motor-vehicle, who knows that he has injured the person or property of another user of the highway, must perform the whole duty imposed by the statute. If he fails to promptly stop, he is guilty of an offence; if he does stop and then immediately drives on without making any attempt to render the assistance which he must have seen was necessary, he is still guilty of an offence; and if he stops and renders assistance, but refuses, upon request, to give his name and address, this also constitutes an offence. But if, knowing that he has injured persons or property, he merely drives on, making no attempt to render assistance or give his name and address, the whole transaction involves only one offence, and evidence of it would authorize the imposition of but a single penalty."

It is true that the learned judge by this language seems to make knowledge of the injury, on the part of the operator, an element of the offence.

Our act of assembly does not contain the word "know" or "knowledge." In that respect it is different from the laws of other states.

In New York, the statute provides that the operator must stop, give his name, etc., where he is operating a motor-vehicle, "knowing that an injury has been caused:" People v. Rosenheimer, 209 N. Y. 115, 102 N. E. Repr. 530; People v. McLaughlin, 165 N. Y. Supp. 545.

The same language is used in the statute of Maine: State v. Verrill, 112 Atl. Repr. 673.

In Massachusetts, the offence consists of "knowingly going away without stopping and making himself known, after causing the injury." Of the question of knowledge, it is said in Com. v. Horsfall, 213 Mass. 232, 100 N. E. Repr. 362, 364: "It would have been simple for the legislature to have made the act of going away by the driver of an automobile without making himself known, after injuring person or property, a crime, and this would have been accomplished by omitting the word 'knowingly' from the statute. The insertion of this word cannot be treated as immaterial."

Our statute does not contain the word "knowing" or "knowingly." It provides that "any operator of a motor-vehicle, who shall have injured the person or property of any other user," shall stop. To hold that before one could be convicted under this statute he must definitely and positively know that he has inflicted an injury would not only be reading something into the statute that is not there, but would be making the statute nugatory. One who is operating a heavy machine at an excessive rate of speed might rip the fender off of a lighter machine without much jar to his own automobile and pass on under the assumption that there was no injury, and he could not be convicted

because he had no knowledge of the injury. We do not think the Superior Court intended to so define the offence under our statute. We think the statute means that one who knows he has had a collision shall stop. But even if, before a conviction can be had under this act, "knowledge" is to be imputed to the operator, it is not absolute and positive knowledge that must be shown before the offence is proven. As was said in Woods *v.* State, 15 Ala. App. 251, 73 So. Repr. 129, 130: "If injury is inflicted under such circumstances as would ordinarily superinduce the belief in a reasonable person that injury would flow, or had flown, from the accident or collision, then it is the duty of the motor operator to stop his vehicle."

While it is undoubtedly true that the extent of the injury done by this collision, not only to Gerlock's automobile, but also to that of the defendant, necessarily shows a considerable impact between the two machines, which should have put the defendant on notice, can it be said that the statement of Krodel, who immediately looked back and told the defendant that the other machine had not stopped, was not for the jury to consider as part of the *res gestæ?* If it was part of the *res gestæ,* then necessarily it should have been offered in evidence.

*Res gestæ* may be defined as those circumstances which are the undesigned incidents of a particular litigated act and which are admissible when illustrative of such act. "They may consist of speeches of any one concerned, whether participant or bystander; they may comprise things left undone as well as things done. Their sole distinguishing feature is that they should be necessary incidents of the litigated act; necessary in this sense, that they are part of the immediate preparations for, or emanation of, such act, and are not promoted by the calculated policy of the actors:" First National Bank *v.* Home Ins. Co., 274 Pa. 129, 132, and cases cited.

We cannot say, as a matter of law, that the statement of Krodel to the defendant was designed, and, therefore, not "an undesigned incident" of the act, even though it is argued by the Commonwealth that Krodel may have been *particeps criminis.* It may be that this declaration was an emanation of the collision and not promoted or inspired by the defendant.

In Scott *v.* State (Texas, 1921), 233 S. W. Repr. 1097, 1099, it is said concerning a prosecution such as this: "An accused could not be held criminally liable for a failure to do what was not reasonably apparent to him as necessary at the time. One acting in apparent necessary self-defence does so from what appears to him, viewed from his standpoint at the time, with all the facts and circumstances within his knowledge and not from the viewpoint of somebody else, or the jury, in the light of subsequent events."

The case of Com. *v.* Horsfall, 213 Mass. 232, throws some light on this question. There the evidence showed that the defendant stopped, sent a man named Brooks back to the place where a woman was injured, and where the other automobile remained, with instructions to disclose his identity, and that, although returning to the place, Brooks did not tell who the defendant was. The jury were instructed that, even though the defendant told Brooks to go back and tell his name and residence, and relied on him to do it, and supposed he had done it, yet, if Brooks failed to do as requested, the defendant had not complied with the statute. Concerning this, the appellate court adds: "If in truth he has delegated the duty of revealing his identity to an agent, and honestly and with good reason supposes that this delegated duty has been performed, he cannot be said 'knowingly' to have failed to do what the statute requires, even if the agent did not discharge his duty. If the transaction was genuine throughout, the driver of the automobile may thoroughly, though

2 D. & C.

Commonwealth v. Ebersole.

mistakenly, believe that the requirement of the law has been observed. The charge of the court did not state accurately the law upon this branch of the case, and, hence, this exception must be sustained."

Suppose the defendant himself had looked back and ascertained that Gerlock's machine had not stopped, could it be said that he was bound to stop his automobile when the other had not?

It may be, therefore, that, after Krodel made the statement, the defendant honestly believed that the other car had not stopped and that there was no occasion for him to stop his own automobile. In any event, we think he was entitled to have this evidence submitted to the jury.

For these reasons, we are constrained to grant a new trial.

From William Jenkins Wilcox, Harrisburg, Pa.